UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | |
| | * | |
| DUHAMEL CASSAGNOL, | * | Criminal Action No. 17-cr-10375-ADB |
| | * | |
| Defendant. | * | |
| | * | |
| | * | |

## MEMORANDUM AND ORDER DENYING DEFENDANT'S PETITION TO VACATE SENTENCE

BURROUGHS, D.J.

Duhamel Cassagnol ("Petitioner") was sentenced to 207 months in prison after pleading guilty to seven charges relating to human trafficking.  [ECF No. 79].  Currently pending before the Court is Petitioner's *pro se* petition to vacate his sentence, which is brought pursuant to 28 U.S.C. § 2255.  [ECF No. 88].  The Government opposes, and requests summary dismissal of, the petition.  [ECF No. 102].  For the reasons stated below, the petition, [ECF No. 88], is DENIED.

I.      BACKGROUND

A.      Factual Background

On December 6, 2017, Petitioner was charged in an indictment with conspiracy to commit sex trafficking (18 U.S.C. § 1594(c), Count 1); sex trafficking by force, fraud, and coercion (18 U.S.C. § 1591(a) and (b)(1), Counts 2, 4, and 6); and transportation of an individual for prostitution (18 U.S.C. § 2421, Counts 3, 5, and 7).  [ECF No. 3].

On September 25, 2018, Petitioner entered into a binding written plea agreement, [ECF No. 60], with the Government pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that required the Court to impose a term of incarceration between 180 and 235 months. [Id. at 3–4]. The plea agreement included an appellate waiver whereby Petitioner waived his right to challenge his conviction or sentence on either direct appeal or through any other post-conviction proceeding if the Court imposed a sentence within the agreed upon range. [Id. at 5–6]. The appellate waiver, however, preserved Petitioner's right to raise claims of ineffectiveness of counsel and prosecutorial misconduct. [Id.]. As part of the written plea agreement, Petitioner signed an "Acknowledgment of Plea Agreement" where he acknowledged, among other things, that:

> I am satisfied with the legal representation provided to me by my attorney. We have had sufficient time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Plea Agreement and whether I should go to trial. I am entering into this Plea Agreement freely, voluntarily, and knowingly because I am guilty of the offenses to which I am pleading guilty and I believe this Plea Agreement is in my best interest.

[Id. at 10].

At the Rule 11 hearing in front of this Court, also on September 25, 2018, Petitioner, who was represented by counsel, confirmed that he had signed the plea agreement, that he had had an opportunity to discuss the plea agreement with his attorney, and that he had no questions about it.

> THE COURT: . . . Turn to the last page [of the plea agreement], Mr. Cassagnol. Is that your signature on that page?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: You've had an opportunity to read it and talk to your lawyer about the agreement before you signed it?
>
> THE COURT: Do you have any questions about the agreement or are you good with it?
>
> THE DEFENDANT: No.

THE COURT: You're all set to go forward on that agreement, no questions?

THE DEFENDANT: Yes, Your Honor.

[ECF No. 104 7:3–16 ("Rule 11 Hr'g Tr.")].

Petitioner also affirmed under oath that he was pleading guilty because he was guilty and that no one was forcing him to plead guilty.

THE COURT: Anyone forcing you to plead guilty in this case?

THE DEFENDANT: No, Your Honor.

THE COURT: Are you pleading guilty of your own free will and because you are, in fact, guilty?

THE DEFENDANT: Yes, Your Honor.

[Id. 13:6–11].

The Court ensured that Petitioner understood that he could plead not guilty and go to trial and discussed the trial rights that he would be giving up if he did plead guilty. [Rule 11 Hr'g Tr. 20:13–22:13]. These rights included the right to be presumed innocent unless and until the Government proved his guilt beyond a reasonable doubt, the right to counsel at trial, the right to testify or put on evidence in his own defense, and the right to subpoena witnesses to testify. [Id. 20:25–22:13]. Petitioner affirmed that he understood his right to go to trial and all the other rights that go along with a trial. [Id.]

During the Rule 11 hearing, at the Court's request, the Government reviewed the elements of each of the charged offenses, [Rule 11 Hr'g Tr. 22:14–23:24], and provided a detailed factual basis to support the plea by summarizing the evidence that it would have presented at trial to prove each of the elements of the charged offenses, [id. 24:14–27:16]. In sum, the Government stated that it would have presented evidence to show that Petitioner, with

the assistance of another person, conspired to traffic women across state lines for the purposes of engaging in prostitution.  [Id.].  The Government would have introduced statements from at least three victims, cell phone location data, hotel bills, text messages, rental car records, and other cell phone records.  [Id. 26:5–13, 27:2–16].  After hearing the Government's factual basis, Petitioner stated he did not disagree with anything the prosecutor said about the evidence that would have been presented to the jury.  [Id. 27:17–19].

Towards the end of the hearing, the Court asked if "in light of the conversation we've just had, do you still want to plead guilty here today?" and Petitioner responded affirmatively.  [Rule 11 Hr'g Tr. 28:13–16].  The Court deferred acceptance of the plea agreement pending its review of the Presentence Report.  [Id. 27:20–28:2].  Sentencing was set for December 18, 2018.  See [id. 30:17–31:11].

On December 11, 2018, the Court received a letter from Petitioner in which he expressed his regret for having hung out with the wrong people and gotten into trouble.  [ECF No. 61].  Thereafter, Petitioner's sentencing date was continued to January 15, 2019 and then to January 22, 2019, each time pursuant to an assented-to-motion.  [ECF Nos. 62, 63, 66, 67].  On January 21, 2019, Petitioner's attorney filed a motion to withdraw at the request of Petitioner.  [ECF No. 69].  As a result, Petitioner's sentencing was continued again.  [ECF No. 70].  Successor counsel entered her appearance for Petitioner on January 26, 2019.[1]  [ECF No. 71].  The sentencing date was continued to May 7, 2019, again pursuant to an assented-to-motion.  [ECF Nos. 73, 74].

---

[1] Throughout his petition, Petitioner complains about the conduct of both his counsel and successor counsel.  The change in counsel is not relevant except to the extent that it reflects that Petitioner was represented by two different counsel, received advice from each, and had time after the appearance of successor counsel to withdraw or otherwise object to his plea.  For clarity, where it is not clear from the time frame which counsel is being referred to, the Court uses the terms "counsel" and "successor counsel" to differentiate.

On May 7, 2019, the Court held a sentencing hearing. [ECF No. 78]. At that hearing, having reviewed the Presentence Report, the Court accepted the plea agreement. Consistent with the Presentence Report, the parties agreed that Petitioner's guideline sentencing range was 262–327 months in contrast to the 180–235 months set forth in the plea agreement. See [ECF No. 85 21:8–13 ("Sentencing Hr'g Tr.")]. When asked for their sentencing recommendations, counsel for the Petitioner recommended a sentence of 180 months and the Government recommended 235 months. [Id. 21:14–16, 30:24–31:1]. After hearing from both counsel and the Petitioner, the Court sentenced Petitioner to 207 months in the custody of the Bureau of Prisons. [ECF No. 78; Sentencing Hr'g Tr. 10:6–7, 34:20–25]. Neither in his December 11, 2018 letter nor during his thoughtful allocution at sentencing, nor at any other time prior to sentencing, did Petitioner object to his plea agreement or suggest that he did not want to plead guilty or that he was being forced into it. This is particularly noteworthy given that the plea was not accepted by the Court for more than seven months after it was signed.

Following the sentencing hearing, on May 20, 2019, Petitioner filed a notice of appeal to challenge his plea agreement. [ECF No. 77]. The notice of appeal stated that he was not satisfied with his counsel's representation, referring to counsel who represented him through his plea. [Id.]. Among other things, Petitioner's notice of appeal alleged that this counsel had limited contact with him, did not provide him with information about the victim's statements, and did not give enough time to consider the plea agreement, which he felt forced to accept. [Id.]. His appeal was docketed in the First Circuit on May 23, 2019. United States v. Cassagnol, No. 19-1515 (1st Cir. May 23, 2019). On June 5, 2019, Petitioner's successor counsel filed an appearance in the appeal. Notice of Appearance, United States v. Cassagnol, No. 19-1515 (1st Cir. June 5, 2019). The same day, Petitioner, via his successor counsel, filed a motion to

voluntarily dismiss his appeal.  Appellant Motion to Dismiss Appeal, <u>United States v. Cassagnol</u>, No. 19-1515 (1st Cir. June 5, 2019).  The motion included a signed affidavit from successor counsel and a signed statement from Petitioner.  <u>Id.</u> at 2–3.  Petitioner's statement said:

> I, Duhamel Cassagnol, am the appellant in this case.  I have discussed my case and the potential issues reviewed in assessing the appeal with my attorney, [successor counsel].  After that discussion I authorized the withdrawal of my appeal.  This statement is to confirm that I consent to the withdrawal of my appeal.  I understand that the appeal will be dismissed and that the judgment of the district court and the sentence imposed by the district court will stand.

<u>Id.</u> at 2.

Successor counsel's affidavit swore that she represented Petitioner in the appeal and that "I have reviewed the file and researched potential issues for appeal.  After so doing, I discussed the case with Mr. Cassagnol in person."  <u>Id.</u> at 3.  On June 18, 2019, the First Circuit granted the motion and ordered that Petitioner's appeal be voluntarily dismissed.  Judgment, <u>United States v. Cassagnol</u>, No. 19-1515 (1st Cir. June 18, 2019).

### B.      Procedural Background

On April 28, 2020, Petitioner, representing himself, filed the instant petition to vacate his sentence with a supporting memorandum.  [ECF Nos. 88, 89].  Petitioner asserts three grounds in support of his petition: 1) he involuntarily, unintelligently, and unknowingly pled guilty to the charges that led to his 207 month sentence because he was coerced into accepting the plea by his counsel; 2) he received ineffective assistance from his counsel in violation of his Fifth and Sixth Amendments rights due to counsel's failure to provide him with discovery or the Government's evidence, and counsel's failure to challenge his criminal history at sentencing; and 3) he received ineffective assistance of counsel in violation of due process because his counsel failed to file a notice of appeal and direct appeal.  [ECF No. 88 at 4–7; ECF No. 89 at 5–19].

On July 2, 2020, Petitioner filed a motion to supplement his petition.  [ECF No. 97].

The supplement was prepared by another inmate who is incarcerated with Petitioner.  [Id. at 7

n.1.]  The supplement alleges that his counsel did not provide him with discovery, that the

Government should have provided him with any material evidence favorable to his defense, that

counsel refused to file a notice of appeal, failed to explain the advantages and disadvantages of

going to trial and refused Petitioner's request to pursue a trial, and, finally, that the plea was

unknowing, unwilling, and involuntary.  [Id. at 1–7].  Petitioner also asserts that he is innocent

and did not commit the offenses to which he pled guilty.  [Id. at 7].

On August 13, 2020, Petitioner filed a second motion to supplement that attached

affidavits from two women who swore that Petitioner had not forced them into prostitution.

[ECF No. 101].  The authors of the affidavits also swore they would testify to those facts on

Petitioner's behalf.  [Id.].

The Government filed its opposition and request to summarily dismiss on August 14,

2020, [ECF No. 102], but did not object to Petitioner's motions to supplement.  [Id. at 5].[2]

## II.       LEGAL STANDARD

Under 28 U.S.C. § 2255(a), individuals in federal custody can move the sentencing court

to vacate, set aside, or correct their sentence if: 1) "the sentence was imposed in violation of the

Constitution or laws of the United States;" 2) "the court was without jurisdiction to impose such

sentence;" 3) "the sentence was in excess of the maximum authorized by law;" or 4) the sentence

"is otherwise subject to collateral attack."  28 U.S.C. § 2255(a); David v. United States, 134 F.3d

470, 474 (1st Cir. 1998) (citing 28 U.S.C. § 2255).

---

[2] The Court grants Petitioner's first request to supplement his petition, [ECF No. 97], as
unopposed.   The Court previously granted Petitioner's second request to supplement his
petition, [ECF No. 101], as unopposed on January 15, 2021.  [ECF No. 103].

The catch-all fourth category includes only assignments of error that reveal "fundamental defects" which, if uncorrected, will "result[ ] in a complete miscarriage of justice," or irregularities that are "inconsistent with the rudimentary demands of fair procedure."  In other words, apart from claims of constitutional or jurisdictional nature, a cognizable section 2255 claim must reveal "exceptional circumstances" that make the need for redress evident.

David, 134 F.3d at 474 (citation omitted) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

While the petitioner has the burden to show he is entitled to relief under § 2255, David, 134 F.3d at 474, "[p]ro se habeas petitions normally should be construed liberally in petitioner's favor," United States v. Ciampi, 419 F.3d 20, 24 (1st Cir. 2005) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

## III.    DISCUSSION

### A.    Request for an Evidentiary Hearing

Petitioner has requested an evidentiary hearing on his petition.  [ECF No. 88 at 12; ECF No. 89 at 20].  The Government opposes the request.  [ECF No. 102 at 20].

A § 2255 petitioner bears the burden of establishing the need for an evidentiary hearing on the claims alleged in the petition.  See Mack v. United States, 635 F.2d 20, 26–27 (1st Cir. 1980).  An evidentiary hearing on a § 2255 petition is an "exception, not the norm."  Moreno-Morales v. United States, 334 F.3d 140, 145 (1st Cir. 2003).  When determining whether an evidentiary hearing is necessary, "the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets."  United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).  Ultimately, a court need not hold an evidentiary hearing

when a § 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case.  In other words, a § 2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need

not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible.

Id. at 226 (internal citations and quotations omitted). Further, when "a petition for [§ 2255] relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." Id. at 225.

Here, Petitioner has failed to show that an evidentiary hearing is warranted. The petition, accompanying memorandum, and supplemental briefs assert three grounds for relief, which, as described in more detail below, are all either procedurally defaulted, lack merit, or both. Accordingly, because Petitioner's claims are "inadequate on [their] face" or "conclusively refuted as to the alleged facts by the files and records of the case," McGill, 11 F.3d at 225, the Court declines to hold an evidentiary hearing. The Court also notes that, having presided over the plea and sentencing in this case, it is fully familiar with many of the underlying circumstances referenced in the petition.

**B.      Ground One: Petitioner Did Not Knowingly, Voluntarily, and Intelligently Enter into the Plea Agreement**

Petitioner first claims that his sentence should be vacated because his plea was involuntarily, unknowingly, and unintelligently made. [ECF No. 89 at 5]. Petitioner argues that his former counsel coerced him into pleading guilty by telling him he would face a life term in prison; disregarding his requests for a trial; and ignoring his claims that he was not guilty, that the Government had no evidence again him, and that the charges were racially motivated. [Id. at 5–6]. Petitioner also states that he did not understand the plea or the charges against him. [Id. at 6]. Finally, Petitioner argues that his plea was unintelligent because he is innocent of the charges contained in the plea agreement and the Government could not have proven the case at trial. [Id. at 8]. Construing the petition liberally in his favor, Petitioner's claim can also be read as

9

asserting ineffective assistance of counsel.  Specifically, that Petitioner was deprived of the effective assistance of counsel because of his counsel's coercive tactics that led him to accept an unknowing, unintelligent, and involuntary plea.[3]  [Id. at 6].

   The Government contends that this claim does not entitle Petitioner to relief because: 1) Petitioner did not raise it during the district court proceedings and the claim is therefore procedurally defaulted; and 2) the claim is not cognizable under § 2255 and meritless.  [ECF No. 102 at 8–14].

### 1.   Procedural Default

A "defendant's failure to object at sentencing and/or on direct appeal. . . constitutes a procedural default, leaving the issue open to collateral attack only if the defendant can show cause and prejudice." Prou v. United States, 199 F.3d 37, 47 (1st Cir. 1999); see also Bucci v. United States, 662 F.3d 18, 27 (1st Cir. 2011) ("Collateral relief in a § 2255 proceeding is generally unavailable if the petitioner has procedurally defaulted his claim by 'fail[ing] to raise [the] claim in a timely manner at trial or on [direct] appeal.'" (quoting Berthoff v. United States, 308 F.3d 124, 127–28 (1st Cir. 2002) (alterations in original))).

A petitioner can overcome a procedural default only if he can show: "(1) 'cause' for having procedurally defaulted his claim; and (2) 'actual prejudice' resulting from the alleged error." Bucci, 662 F.3d at 27 (quoting United States v. Frady, 456 U.S. 152, 167–68 (1982)).  To satisfy the "cause" requirement, the defendant must demonstrate "that some external impediment

---

[3] At the end of his memorandum, Petitioner also appears to argue the plea was involuntary because the final sentence was for "more time than the Rule 11(c) (1) (c) plea was agreed to." [ECF No. 89 at 16].  This claim is directly contradicted by the text of the plea agreement and other documents in the record.  The sentencing range agreed upon in the plea was 180–235 months.  Petitioner does not explain how the Court's decision to sentence Petitioner within the agreed-upon range was erroneous.  This argument fails to show that the plea was involuntary.

. . . prevented [the claim] from being raised earlier." Andiarena v. United States, 967 F.2d 715, 718 (1st Cir. 1992) (per curiam).  "Actual prejudice" requires the petitioner to demonstrate "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Frady, 456 U.S. at 170.  A petitioner can also overcome a procedural default if he can demonstrate actual innocence. Bousley v. United States, 523 U.S. 614, 622 (1998).  To establish actual innocence, a petitioner must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Id. at 623 (internal citations and quotations omitted).

The Government argues that Petitioner did not raise any challenge to the voluntariness of his plea at his Rule 11 hearing or at sentencing and that it is therefore now procedurally defaulted.  [ECF No. 102 at 8–9].  The Court agrees that Petitioner did not raise the involuntariness of his plea at sentencing.  He also did not raise the issue during his plea, or in the seven months between plea and sentencing, including after he replaced the counsel that represented him at the plea with successor counsel.  Therefore, his claim that he did not knowingly, voluntarily, and intelligently enter into the plea agreement is procedurally defaulted.[4]

Petitioner cannot overcome this procedural default because he has not demonstrated cause for the default or actual innocence.  Petitioner offers no explanation for the delay in raising a challenge to the voluntary nature of his plea, and the Court sees none.  At the Rule 11 hearing, the Court inquired about Petitioner's understanding of the plea and his satisfaction with his

---

[4] The Government does not address whether Petitioner raised this claim on his direct appeal, or the impact that the wavier of certain appellate rights contained in the plea agreement has on Petitioner's ability to raise this claim on collateral review.  Because the Court ultimately finds that even if the claim were not procedurally defaulted, Petitioner is not entitled to relief on this ground, the Court declines to address this issue.

counsel.  [Rule 11 Hr'g Tr. 12:2–13:22].  Petitioner affirmed that he understood the context and implications of his plea agreement, that he was not being forced to accept the plea, and that he understood he could withdraw the plea.  [Id.].  He also stated he was satisfied with his counsel's performance.  [Id. 6:7–12].  Notably, Petitioner had an opportunity to raise any issues he had with the plea agreement during the seven plus months between the Rule 11 hearing and his sentencing, during which time he obtained new counsel, particularly given that the Court did not accept the plea agreement until the sentencing hearing.

Throughout his memorandum and supplements, Petitioner also asserts that he is actually innocent and that the charges against him were racially motivated because the Petitioner "is black and the girls that were forced to get him indicted were white."  E.g., [ECF No. 89 at 5–8]. These conclusory statements are directly refuted by his sworn testimony and are insufficient to overcome procedural default.  At the Rule 11 hearing, Petitioner affirmed that he was pleading guilty because he was in fact guilty.  [Rule 11 Hr'g Tr. 13:6–22].  At the sentencing hearing (and in his letter of December 11, 2018), he expressed remorse for the conduct that led to his conviction.  [Sentencing Hr'g Tr. 32:3–7; ECF No. 61].  To the extent he relies on them, the affidavits submitted with Petitioner's second supplement also do not support a claim of actual innocence where neither Petitioner nor the affiants claim that they were identified as victims by the Government.  [ECF No. 101].  Further, the Court credits the Government's statements that the two women who submitted affidavits were not named as victims in the indictment.  [ECF No. 102 at 12].  Finally, there is not one scintilla of evidence to suggest that this prosecution was racially motivated.

The Court also notes that the Government's factual basis in support of the plea and the information conveyed in the Presentence Report, to which Petitioner did not object, directly

12

contradict any assertion of actual innocence.  The evidence against the Petitioner, even absent his admissions during the plea colloquy, in his December 2018 letter, and through his allocution, was compelling.

Accordingly, Petitioner's claim that he entered into a plea agreement involuntarily, unintelligently, or unknowingly is procedurally defaulted and he has not demonstrated cause or actual innocence as necessary to overcome the default.

The Court recognizes that, to the extent this claim is also construed to be a claim of ineffective assistance of counsel, it is not subject to procedural default based on a failure to raise it in the district court or on direct appeal.  See Massaro v. United States, 538 U.S. 500, 504 (2003) ("The procedural default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments.  We conclude that requiring a criminal defendant to bring ineffective-assistance-of-counsel claims on direct appeal does not promote these objectives.").  Although the ineffective assistance of counsel claim is not procedurally defaulted, the claim is without merit and does not provide grounds for vacating the sentence.  See Section III.B.2 infra.

    2.    <u>The Merits</u>

Even if Petitioner could overcome the procedural default, his challenge to the voluntariness of his plea agreement still does not entitle him to relief.  The record from his Rule 11 hearing squarely contradicts Petitioner's claims that he did not voluntarily and knowingly enter into the plea agreement.

"[A]s a general matter, 'a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.'"  <u>Wilkins</u>

v. United States, 754 F.3d 24, 28 (1st Cir. 2014) (quoting Mabry v. Johnson, 467 U.S. 504, 508 (1984)).  "A defendant is normally bound by the representations that he himself makes in open court at the time of his plea."  United States v. Gates, 709 F.3d 58, 69 (1st Cir. 2013).  Those statements "are more likely to be reliable than later versions prompted by second thoughts." United States v. Padilla-Galarza, 351 F.3d 594, 598 (1st Cir. 2003).  "[A] court is entitled to give weight to the defendant's statements at his change-of-plea colloquy absent a 'good reason for disregarding them.'"  United States v. Miranda, 654 F.3d 130, 138 (1st Cir. 2011) (quoting United States v. Torres–Rosario, 447 F.3d 61, 67 (1st Cir. 2006)).  The Court should disregard the plea colloquy "only when the allegations [of impairment] were highly specific and usually accompanied by some independent corroboration."  Id. (alteration in original) (citing United States v. Pulido, 556 F.3d 52, (1st Cir. 2009)); see United States v. Butt, 731 F.2d 75, 80 (1st Cir. 1984) ("[T]he presumption of truthfulness of the Rule 11 statements will not be overcome unless the allegations in the § 2255 motion are sufficient to state a claim of ineffective assistance of counsel and include credible, valid reasons why a departure from those earlier contradictory statements is now justified.") (citations omitted).

At his Rule 11 hearing, Petitioner stated under oath that he understood the plea agreement and the impact entering the plea would have; that he had had an opportunity to discuss the plea with counsel; and that no one was forcing him to plead guilty.  [Rule 11 Hr'g Tr. 6:7–9, 13:6–22].  Petitioner's memorandum and supplemental materials do not provide any independent evidence to corroborate his claim that the plea was involuntary or show the Court why it should discount his statements in open court.

Petitioner's first supplement also claims that "[c]ounsel never explained the advantages nor disadvantages of proceeding to trial, only that he was not going to pursue a trial because the

Petitioner would receive a life term." [ECF No. 97 at 4]. His signed plea agreement directly refutes this and states "I am satisfied with the legal representation provided to me by my attorney. We have had sufficient time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the term of this Plea Agreement and whether I should go to trial." [ECF No. 60 at 10]. The Court's plea colloquy also addressed whether Petitioner understood his right to a trial and explained to him what rights he had and would forgo by pleading guilty. [Rule 11 Hr'g Tr. 20:25–22:13]. He affirmed that he understood. [Id.].

To the extent Petitioner also raises an ineffective assistance of counsel claim based on his assertion that counsel coerced him into accepting the guilty plea, that claim also fails. Construed liberally, Petitioner argues that counsel was ineffective because he coerced Petitioner to plead guilty and ignored Petitioner's requests to go to trial.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceedings] cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). To succeed on an ineffective assistance of counsel claim, a petitioner must show both that counsel's performance fell "below an objective standard of reasonableness" and that counsel's deficient performance prejudiced the petitioner's case. Smoak v. United States, 12 F. Supp. 3d 254, 264 (D. Mass. 2014) (quoting Strickland, 466 U.S. at 688) (explaining that Strickland establishes a strong presumption of reasonable professional assistance); see Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010) ("[A] lawyer's performance is deficient under Strickland 'only where . . . counsel's choice was so patently unreasonable that no competent attorney would have made it.'" (citation omitted)). This is a high bar that is satisfied if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the

Sixth Amendment." Strickland, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." Id. at 689.

Even if a lawyer's performance is so unreasonable as to render it constitutionally unacceptable, Strickland, 466 U.S. at 687, a court must still withhold relief unless a petitioner also demonstrates prejudice, meaning that "but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different," Sleeper v. Spencer, 510 F.3d 32, 39 (1st Cir. 2007). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. In the context of a guilty plea, the petitioner must show that "that there [was] a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). "A reviewing court need not address both requirements [under Strickland] if the evidence as to either is lacking." Malone v. Clarke, 536 F.3d 54, 64 (1st Cir. 2008) (quoting Sleeper, 510 F.3d at 39). "The burden is on the petitioner to demonstrate ineffective assistance by a preponderance of the evidence." Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993).

Petitioner has failed to demonstrate that counsel's performance was "below an objective standard of reasonableness." See Smoak, 12 F. Supp. 3d at 264 (quoting Strickland, 466 U.S. at 688). First, although the Court recognizes that a guilty plea can be involuntary entered into if it is coerced, United States v. Martinez-Molina, 64 F.3d 719, 732 (1st Cir. 1995), Petitioner offers no convincing evidence to substantiate his statements that counsel coerced him into pleading guilty and ignored his request to go to trial, see United States v. Acevedo, No. 12-cr-10120, 2019 WL 3003904, at *4 (D. Mass. July 9, 2019) (finding petitioner's ineffective assistance of counsel claim failed, in part, because "his insinuations of coercion are unsubstantiated"). Second, as

described above, the record from the plea colloquy directly contradicts Petitioner's allegation
that he was forced or coerced into plead guilty. [Rule 11 Hr'g Tr. 13:6–22]. Petitioner provides
the Court with no basis for presuming that the statements Petitioner made in open court in
support of voluntariness during his Rule 11 hearing are untruthful. See Miranda, 654 F.3d at
138.

Petitioner also cannot satisfy Strickland's second prong, because he cannot demonstrate
prejudice even if counsel's performance were deficient. Petitioner argues he was prejudiced
because he was actually innocent and would have gone to trial but for counsel's coercion. [ECF
No. 89 at 5–6]. Petitioner, however, stated under oath that he was guilty and continued to
express remorse for his conduct after the Rule 11 hearing by way of his December 2018 letter
and statements at the sentencing hearing. [Rule 11 Hr'g Tr. 13:6–22; ECF No. 61; Sentencing
Hr'g Tr. 31:21–32:4]. Further, the Government stated on the record the substantial evidence it
would have presented at trial and Petitioner did not raise any issues with this evidence when
presented with it. [Rule 11 Hr'g Tr. 11:19–13:22]. Petitioner has failed to meet his burden of
demonstrating a "reasonable probability" that he would not have pleaded guilty and would have
gone to trial.

Accordingly, Petitioner is not entitled to relief on this ground.

### C.     Ground Two: Ineffective Assistance of Counsel That Violated Petitioner's Fifth and Sixth Amendment Rights

The Government acknowledges that ground two is not procedurally defaulted because it
claims ineffective assistance of counsel and is a constitutional claim properly brought under
§ 2255. [ECF No. 102 at 14]. Accordingly, the Court goes right to the merits of this claim.

Petitioner argues that his counsel performed deficiently in violation of his Fifth and Sixth
Amendment rights because counsel: 1) did not provide him with discovery or the Government's

evidence, including statements made by victims and his bill of particulars, before his plea was entered; and 2) failed to adequately challenge his criminal history category at sentencing. [ECF No. 89 at 7].

Petitioner fails to satisfy the Strickland two-prong standard and ground two does not entitled him to relief under § 2255. First, the facts alleged in the petition and supporting memorandum do not demonstrate that counsel's representation "fell below an objective standard of reasonableness." See Smoak, 12 F. Supp. 3d at 264 (quoting Strickland, 466 U.S. at 688). Accepting as true the allegations that counsel did not provide Petitioner with discovery, including victim statements and a bill of particulars, the allegations do not show that counsel performed below a reasonable standard. Petitioner does not identify, and the Court has not found, any binding precedent holding that constitutionally adequate representation requires counsel to provide a criminal defendant with complete discovery prior to a guilty plea for that plea to be enforceable. See United States v. Thompson, No. 2:10-cr-00200, 2013 WL 1809659, at *6 (D. Me. Apr. 29, 2013), aff'd, 851 F.3d 129 (1st Cir. 2017) (rejecting "the argument that a defendant cannot enter a binding guilty plea unless previously he personally has seen all the discovery that he asks to see" and recognizing "[t]here is no general constitutional right to discovery of the evidence supporting the prosecution."). Construed liberally, Petitioner also claims that the Government lied about the victims working twelve hours a day and withheld "exculpatory" evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963), and that counsel was ineffective for not challenging the Government's purported lies or obtaining the exculpatory evidence. [ECF No. 89 at 10; ECF No. 97 at 2–3]. Petitioner provides no details as to the evidence that was withheld or the impact that any withheld evidence may have had on his sentence. Without specific facts, Petitioner's conclusory statements do not satisfy his burden

under Strickland.  As to the claims the Government lied, at sentencing the Government explained the evidence that supported its claim that victims worked twelve hours a day and Petitioner's successor counsel zealously argued why that calculation was incorrect.  [Sentencing Hr'g Tr. 12:17–18:9].  Therefore, the record belies Petitioner's claim that the Government had no evidence to support its twelve-hour finding or that counsel was ineffective in failing to challenge that contention.

Further, statements made on the record in front of this Court contradict Petitioner's claims that his counsel's representation was deficient.  At the Rule 11 hearing, Petitioner affirmed that he was satisfied with counsel's representation and did not raise any issues relating to withheld discovery.  [Rule 11 Hearing Tr. 6:10–12].  He now claims otherwise but does not provide any reason for the Court to disregard the statements he made under oath at the plea hearing and the Court declines to do so.  See Miranda, 654 F.3d at 137.  Petitioner's satisfaction with counsel's performance is also reflected in his signed Acknowledgement of Plea.  [ECF No. 60 at 10].[5]

Petitioner next argues that his criminal history score was inaccurately calculated and that his counsel was ineffective for failing to challenge it.  [ECF No. 89 at 11–13].  Petitioner, however, fails to demonstrate that counsel's performance was deficient in this respect. Ultimately, successor counsel supplemented Petitioner's sentencing memo to raise this issue,

---

[5] The petition also appears to cite to the sentencing hearing transcript with regard to the discovery issue.   [ECF No. 89 at 13].  Because Petitioner was represented by successor counsel at the sentencing hearing, the Court construes this as a challenge to successor counsel's performance regarding discovery.  Although successor counsel's representation is not covered by the Acknowledgment of Plea, the Court reiterates that not providing a defendant with access to all discovery he wishes to see is not evidence of a constitutionally deficient performance.  See Thompson, 2013 WL 1809659, at *6.

[ECF No. 75 at 1–2], and the transcript of Petitioner's sentencing hearing demonstrates that successor counsel also challenged his criminal history score at the sentencing hearing.  At that hearing, Petitioner's successor counsel explained that "his criminal history is overstated by the designation in Category 3, and he really should be treated as if he's in Category 2." [Sentencing Hr'g Tr. 6:10–12].  The Court recognized this and explained that "one could make an argument that your criminal history overstates.  But on the other hand, the guidelines say what they say.  As a practical matter, you're getting the benefit of that.  The bottom of Criminal History Category 1 is 210 months, and I'm sentencing [you] to 207 months." [Sentencing Hr'g Tr. 35:2–7].[6]

    As to Strickland's second prong, even if he could demonstrate that his counsel's conduct fell below standards of reasonableness, Petitioner fails to show prejudice.  The record does not demonstrate that, but for his counsel's errors, there is a reasonable probability "he would not have pleaded guilty and would have insisted on going to trial." See Lockhart, 474 U.S. at 59. Construing Petitioner's filings liberally, Petitioner supports his claim of prejudice by contending that due to his actual innocence and the Government's lack of proof, he would have pursued a trial. [ECF No. 97 at 3].  Petitioner's allegations that he would have proceeded to trial, however, are contradicted by the record, including his under-oath admissions about his guilt.  At his Rule 11 hearing, Petitioner stated that he was pleading guilty to the charged offenses because he was

---

[6] Petitioner also argues that counsel was ineffective for first objecting to the criminal history score and then withdrawing those objections despite the fact that Petitioner requested counsel to continue objecting.  [ECF No. 89 at 12–13].  Based on the record, the Court construes this as a challenge to successor counsel's performance.  [Sentencing Hr'g Tr. 6:2–3 (successor counsel withdrawing an objection to Petitioner's criminal history score)].  The transcript of the sentencing hearing reflects that successor counsel withdrew an objection to the criminal history category because the "math was wrong," but successor counsel continued to argue that the criminal history was overstated.  [Sentencing Hr'g Tr. 6:3–7:9].  Accordingly, counsel's decision to withdraw the objection does not demonstrate deficient performance.

indeed guilty of the charged offenses.  [Rule 11 Hr'g Tr. 13:6–22].  Further, after the Government stated on the record what evidence it would have presented at trial, Petitioner stated he had no disagreements about the evidence.  [Id. 11:19–13:22].  Petitioner also did not raise the issue of discovery materials, his criminal history category, or his counsel's performance generally during the Rule 11 hearing or at sentencing.  Petitioner has therefore not demonstrated a "reasonable probability" that he would not have pleaded guilty and would have insisted on going to trial but for errors by his counsel concerning access to discovery or his criminal history category.

Because Petitioner cannot demonstrate that counsel's performance was deficient or that he was prejudiced by any deficient performance, Petitioner is not entitled to relief on this ground.

### D.   Ground Three: Counsel's Failure to File a Notice of Appeal and Direct Appeal

Petitioner's final claim also alleges ineffective assistance counsel due to his counsel's failure to file a notice of appeal and then to pursue a direct appeal from his sentence as Petitioner had requested.  [ECF No. 89 at 14].  The Government contends that this claim is frivolous because he did in fact file a notice of appeal and also notes that Petitioner's plea agreement waived most of his appellate rights.  [ECF No. 102 at 19–20].  Ground three is not procedurally defaulted because it is an ineffective assistance of counsel challenge and a constitutional claim properly alleged under § 2255.  [Id. at 19].  Accordingly, the Court moves to the merits of this claim.

"Strickland 'applies to claims . . . that counsel was constitutionally ineffective for failing to file a notice of appeal.'"  Rojas-Medina v. United States, 924 F.3d 9, 15 (1st Cir. 2019) (quoting Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000)).  Counsel's performance is deficient under Strickland's first prong if the attorney "'disregards specific instructions from the defendant

to file a notice of appeal' or fails (under certain circumstances) to consult with the defendant about an appeal." Id. (quoting Flores-Ortega, 528 U.S. at 480). As to Strickland's second prong, prejudice is presumed if counsel "fails to carry out a duty to consult with [defendant] about an appeal." Id. A petitioner has "made out a successful ineffective assistance of counsel claim entitling him to an appeal" if "counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken." Flores-Ortega, 528 U.S. at 484. The Supreme Court recently clarified that the presumption of prejudice applies "even when the defendant has signed an appeal waiver." Garza v. Idaho, 139 S. Ct. 738, 744 (2019). Accordingly, Garza makes clear that counsel is not excused for failing to file a notice of appeal simply because a defendant waived appellate rights through a guilty plea.

Although a waiver of appeal does not relieve counsel of the duty to file a notice of appeal, Petitioner still cannot succeed on this claim because the facts show he was not deprived of an appeal he would have otherwise taken. On May 20, 2019, Petitioner did file a timely notice of appeal after his sentencing and that notice raised his ineffective assistance of counsel claims. [ECF No. 77]. After the appeal was docketed, his successor counsel filed a notice of appearance in the First Circuit to represent him on appeal. Notice of Appearance, United States v. Cassagnol, No. 19-1515 (1st Cir. June 5, 2019). Petitioner, through counsel, then moved to voluntarily dismiss the appeal. Appellant Motion to Dismiss Appeal, United States v. Cassagnol, No. 19-1515 (1st Cir. June 5, 2019). The motion for voluntary dismissal included affidavits from Petitioner and successor counsel explaining that they discussed the appealable issues. Petitioner's current motion does not reference the appeal filed on May 20, 2019 or explain how this fact does not foreclose this ground for relief.

If Petitioner's claim is construed as a challenge to the fact that he, rather than counsel, performed the task of filing the notice of appeal, this is not sufficient to show prejudice.  See [ECF No. 77 (stating the notice was filed by Petitioner and not under his attorney's credentials)]. Petitioner had the opportunity to appeal, the notice of appeal was timely filed, and counsel represented him in the appeal.  Finally, any claim that counsel was ineffective because the appeal was voluntarily dismissed is not grounds for relief in this case.  The appellate record shows that Petitioner agreed to dismiss the appeal after discussing it with his attorney.  Appellant Motion to Dismiss Appeal, United States v. Cassagnol, No. 19-1515 (1st Cir. June 5, 2019).  Petitioner does not allege that he did not consent to the voluntary dismissal.  Counsel's decision to file a consented-to motion to dismiss does not demonstrate that counsel's representation "fell below an objective standard of reasonableness."  See Smoak, 12 F. Supp. 3d at 264 (quoting Strickland, 466 U.S. at 688).

Accordingly, Petitioner's claim alleging ineffective assistance of counsel for failure to file a notice of appeal and a direct appeal does not provide grounds for relief.

## IV.   CONCLUSION

Petitioner's first request to supplement his motion, [ECF No. 97], is GRANTED, as unopposed.  Petitioner's petition to vacate his sentence, [ECF No. 88], is DENIED.  The Government's request to summarily dismiss the petition, [ECF No. 102], without an evidentiary hearing is GRANTED.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to" a § 2255 petitioner.  Rules Governing Section 2255 Cases, R. 11(a).  The Court DECLINES to grant a certificate of appealability.

**SO ORDERED.**

April 30, 2021                                        /s/ Allison D. Burroughs
                                                     ALLISON D. BURROUGHS
                                                     U.S. DISTRICT JUDGE